FILED IN CHAMBERS
U.S.D.C   Atlanta

NOV 13 2007

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NO WITNESS, LLC and STEPHEN
BARNES,

   Plaintiff,

v.

CUMULUS MEDIA PARTNERS, LLC,
UNIHOST, INC., FRED TOETTCHER
(a/k/a FRED TOUCHER), JAMES
("JIMMY") BARON, and LESLIE
FRAM,

   Defendants.

CIVIL ACTION NO.

1:06-CV-1733 JEC

## ORDER and OPINION

  This case is presently before the Court on defendant's Motion to Dismiss Amended Defamation Claim [38]. In reply, plaintiff has filed a Response in Opposition to Defendant's Motion [40]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion to Dismiss Amended Defamation Claim [38] should be **DENIED**.

## BACKGROUND

  Plaintiff filed this action against defendants Cumulus Media Partners, LLC, Unihost, Inc., Fred Toettcher, James Baron, and Leslie Fram, on July 25, 2006. The grounds for relief are copyright infringement and defamation. Settlement attempts were made, and the

AO 72A
(Rev.8/82)

Court granted an Order denying without prejudice each defendant's motion to dismiss [50]. All defendants except Fred Toettcher ("defendant") settled with plaintiff. Mr. Toettcher reactivated his Motion to Dismiss Amended Defamation Claim on July 12, 2007 [59]. Because plaintiff's copyright infringement claim is not at issue, the Court will limit the facts to those which are relevant to plaintiff's amended defamation claim and defendant's motion to dismiss.

Plaintiff and defendant were both popular radio personalities on an Atlanta FM radio station (WNNX) known as "99X." (Amended Complaint ("Am. Compl.") [31] at ¶ 7, 10.) Defendant was employed by 99X from 1999 through 2006, and plaintiff was employed by 99X from 1992 through 2003. (*Id.* at ¶¶ 7, 10.) In 2003, 99X underwent "a change in direction to attempt to attract a different/greater demographic." (Am. Compl. [31] at ¶ 11.) As a result, plaintiff and the management of 99X mutually arranged plaintiff's departure from the station. (*Id.*) Plaintiff stopped working with the station on October 24, 2003, but was paid his regular salary through March 31, 2004. (*Id.*)

Upon his departure, plaintiff started a company called No Witness, LLC, in order to make a film. (*Id.* at ¶ 12.) Plaintiff starred in the film entitled No Witness, and it was released by No Witness, LLC in 2004. (*Id.* at ¶ 13.) Subsequently, on or about July 28, 2005, Mr. Toettcher and the other defendants "engaged in a promotional campaign to ... denigrate plaintiff" and his film. (*Id.*

2

at ¶ 25.)  This included playing audio clips of the film on the air and making negative and derogatory comments about plaintiff and the film.  (*Id.* at ¶¶ 17, 18, Exhibits B, C.)  The defendants also claimed that 99X was the "official No Witness station," and promoted the "official unofficial screening of No Witness."  (*Id.* at ¶ 18, Exhibits B, C.)  Defendants then aired the movie at a local restaurant and bar for 99X listeners, despite plaintiff's express objections.  (*Id.* at ¶¶ 19-21.)  Defendants continued to denigrate plaintiff and his film throughout the screening as well.  (*Id.*)

Among many other negative statements during this period, defendant Toettcher said on the air, and at the screening, that plaintiff had been fired from 99X, that plaintiff is a "retarded child," and a "****ing ***hole."  (*Id.* at ¶ 26, 33, 44, Exhibit C.)  In November 2005, another radio personality Chris ("Crash") Clark was fired from 99X for alleged misconduct.  (*Id.* at ¶ 35.)  He allegedly gave 99X concert tickets to a woman in exchange for "engaging in sexual activity in a night club bathroom with another patron."  (*Id.* at ¶ 36.)  As a result of defendant's statements and Mr. Clark's notorious termination, plaintiff claims that "an atmosphere of suspicion" has been created around plaintiff and his departure from 99X.  (*Id.* at ¶ 37.)  During public appearances, people have approached plaintiff and asked him "what he did to get fired from 99X."  (*Id.*)

After defendant left 99X in 2006, he moved to Boston,

3

Massachusetts, but continued to personally attack plaintiff on his website: www.fredtoucher.com. (Am. Compl. at ¶ 38, Exhibit E.) The comments by defendant include the following: "Barnes is pathetic," "I've always known Barnes is a retard," Barnes is "captain back acne," and "a ****ing hack." (Id.) Plaintiff subsequently filed the instant action for defamation [1], and defendant seeks to dismiss it [38] by claiming that plaintiff was fired from 99X which makes that statement true, and defendant claims that the other statements are not defamatory. The Court now addresses defendant's motion and arguments.

## I.   The Standard for a Motion to Dismiss

The Supreme Court recently addressed the standard for granting motions to dismiss. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). Twombly has lead to some confusion over its intended effects. This Court will attempt to explain the case and the discussion that it has inspired. Most importantly, this Court will attempt to apply a fair reading of the case as illustrated by the Eleventh Circuit.

In Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court abrogated the standard for motions to dismiss set out in Conley v. Gibson, 355 U.S. 41, 47 (1957). The Conley court established the "no set of facts" standard: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

4

claim which would entitle him to relief." 355 U.S. at 45-46. The *Twombly* court explained that a literal reading of this language would keep any plaintiff alive in almost any situation. *Id.* "[A] wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed facts]' to support recovery." 127 S.Ct. at 1968. The Court, in response, created the "plausibility" standard, stating that there is a "need at the pleading stage for allegations plausibly suggesting (not merely consistent with) ... the cause of action being asserted.... Rule 8(a)(2) [requires] that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief." *Id.* at 1966.

It is no surprise that this case has engendered a great deal of discussion about what exactly the Supreme Court meant. Interested parties suggest meanings supportive of their needs, which rarely align with the opposing parties' suggested interpretations. For example, the defendants in *Behrend v. Comcast Corp.*, et. al, 2007 WL 2221415, *1-2 (E.D. Pa. Aug. 1, 2007) claimed that *Twombly* created a heightened standard of proof that the plaintiff had not met, while the plaintiff claimed that it did not. In the alternative, the plaintiff also argued that *Twombly* simply did not apply at all because its holding was applicable only to § 1 of the Sherman Act. *Id.*

The Second Circuit also struggled with application of *Twombly*,

5

and in a thorough review, questioned whether it is even applicable to cases falling outside of § 1 of the Sherman Act. *Iqbal v. Hasty*, 490 F.3d 143, 153-60 (2nd Cir. 2007). The *Iqbal* court ultimately concluded that *Twombly* was not limited to cases arising under the Sherman Act, and the court made several other observations about *Twombly.* In particular, the Second Circuit pointed to several aspects of *Twombly* that suggest a heightened pleading standard, as well as other language that tends to negate the same. *Iqbal,* 490 F.3d at 153-60.

The Second Circuit outlined the following factors which suggest that the Supreme Court was adopting a somewhat heightened pleading standard: (1) the explicit overruling of *Conley's* no-set-of-facts standard; (2) the use of various phrases which reference the quantity of fact alleged, possibly suggesting notice pleading is not enough; and (3) the adoption of what is now called the "plausibility standard." *Id.*; see Patrick A. Jackson, Supreme Court Announces New "Plausibility" Standard for Rule 12(b)(6) Dismissal, 26 AUG Am. Bankr. Inst. J. 34 (2007). The Second Circuit, however, also discerned language in the Supreme Court's opinion that disfavor an inference that the court was setting out a new and heightened pleading standard, specifically, (1) the Court's express disclaimer of a new standard; (2) citation to and approval of FED. R. CIV. P. Form 9, which contains only a general allegation of negligence and not specific facts; and (3) subsequent citation to *Twombly* by the

6

Supreme Court for the proposition that pleading specific facts is unnecessary to support a civil rights claim. *Id.*

The court also noted another important aspect of *Twombly.* The Supreme Court did not address or alter *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). *See Iqbal,* 490 F.3d at 153-54. In *Swierkiewicz,* the Supreme Court had stated that a judicially-imposed heightened pleading standard would conflict with Rule 8, and that amending the Federal Rules of Civil Procedure would be the only way to create such a heightened standard. *Swierkiewicz,* 534 U.S. at 514-15; *Iqbal,* 490 F.3d at 153-54. The Second Circuit noted that the Supreme Court expressly abrogated *Conley's* no-set-of-facts ruling, but it did not expressly call into question the validity of *Swierkiewicz. Iqbal,* 490 F.3d at 153-54. This suggests that *Twombly* does not affect the application of Rule 8, but rather has another purpose.

> After careful consideration of the foregoing conflicting signals, the *Iqbal* court concluded that *Bell Atlantic* did not announce a universal standard of heightened fact pleading or an antitrust-specific rule. Rather it announced a 'flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim possible.'

Johnson, Am. Bankr. Inst. J. 34, 4. Therefore, according to the Second Circuit, *Twombly* did not alter notice pleading or increase the pleading requirements, rather it called for more concrete allegations where the complaint does not otherwise assert a claim for relief.

7

*Id.*

There are few cases in the Eleventh Circuit which address the application of *Twombly*. However, in *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295-1300 (11th Cir. 2007)(applying Florida law) the Eleventh Circuit applied *Twombly* to a religious discrimination case. The court stated there that, "...the question is whether Watts has alleged enough facts to suggest, raise a reasonable expectation of, and render plausible the fact that he sincerely held the religious belief that got him fired." *Id.* at 1296. Despite the appellate court's difficulties in applying this standard to determine whether the plaintiff had pled "sincerity of his belief," *id.* at 1296, this Court will attempt to follow the lead established by the Eleventh Circuit.

## II.   **Defamation Generally**

As both plaintiff and defendant note, the defamation action here is governed by Georgia law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Delta Airlines, Inc. v. McDonnell Douglas Corp.*, 503 F.2d 239, 244-245 (5th Cir. 1974).[1] There are four elements required for a defamation action in Georgia: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting

---

[1]   Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

8

AO 72A
(Rev.8/82)

at least to negligence; and (4) special harm or the "actionability of the statement irrespective of special harm." *Mathis v. Cannon*, 573 S.E.2d 376, 380, 276 Ga. 16, 20-21 (2002). This law is codified in Georgia's Code. GA. CODE ANN. §§ 51-5-1 through 51-5-11 (1984)(libel and slander).

In addition, when the alleged statements involve public figures and matters of public concern, the Supreme Court has made more stringent the requirements to make the claim for defamation. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). When the plaintiff is a public figure, he must show that the defendant was at fault in publishing the statements and that the plaintiff suffered actual injury from the statements. *Id.; Mathis v. Cannon*, 573 S.E.2d 376, 380, 276 Ga. 16, 20-21 (2002). Fault under this ruling is actual knowledge of the statements' falsity or reckless disregard of the truth. *Id.*

Georgia recognizes both libel and slander. GA. CODE ANN. § § 51-5-1 through 51-5-11 (1984). Libel, in Georgia, is the false and malicious defamation of another "expressed in print, writing, pictures, or signs tending to injure the reputation of the person, and exposing him to public hatred, contempt, or ridicule." GA. CODE ANN. § 51-5-1 (1984). Slander, on the other hand, is oral defamation. Georgia maintains the distinctions between two types of slander: slander per se and slander per quod. *Id.* at § 51-5-4; 50 Am. Jur. 2d Libel and Slander § 140 (2007). "Defamatory words which

9

are actionable per se are those which are recognized as injurious on their face--without the aid of extrinsic proof" or innuendo. *Wright v. S. Bell Tel. & Tel. Co., Inc.*, 313 S.E.2d 150, 154, 169 Ga. App. 454, 458 (1984). The Georgia statute defines three specific types of slander per se including § 51-5-4(3) professional slander, which is most relevant here. Section 51-5-4(3) states that "[m]aking charges against [the plaintiff] in reference to his trade, office, or profession, .... calculated to injure him therein..." are defamatory per se. GA. CODE ANN. §§ 51-5-4(3), 51-5-5, 51-5-6, 51-5-7 (1984). Where the words are defamatory per se, harm is implied and does not need to be proven. *Id.*

Slander per quod is also actionable in Georgia. GA. CODE ANN. § 51-5-4(4) (1984). Although not titled "slander per quod" in the statute, the Georgia code permits suits for the "utterance of disparaging words which are naturally productive of special damage to the plaintiff." Ga. Law of Torts § 28-1 (2007 ed.); GA. CODE ANN. § 51-5-4. However, unlike slander per se, the plaintiff must show special damage to maintain an action under this section. *Id.* When a plaintiff claims that words were defamatory, and the words could have more than one meaning, the plaintiff may allege the meaning with which he claims they were published. *Wright*, 313 S.E.2d at 154, 169 Ga. App. at 458; *Macon Tel. Pub. Co. v. Elliott*, 302 S.E.2d 692, 165 Ga. App. 719 (1983). Then it will be up to a jury to

10

determine whether the statements were defamatory.  *Id.*

    For example, the statement that "Jones cheats his clients" is defamatory on its face because no inference or implication is needed to see that it tends to disgrace Jones in his profession.  *Davita Inc. V. Nephrology Assoc., P.C.*, 253 F. Supp. 2d 1370, 1378 (S.D. Ga. 2003).  In this situation, damage is inferred because it fits the statutory definition of slander per se.  GA. CODE ANN. § 51-5-4; *Davita*, 253 F. Supp. 2d at 1378 (S.D. Ga. 2003).  However, the statement that "Jones was fired for cause," is not necessarily defamatory on its face.  *See id.*  These words could imply that misconduct led to the termination of Jones, but this implication is not necessary from the face of the words alone.  In a situation where Jones had been investigated and accused, yet later cleared of embezzlement, the statement that he had been "fired for cause" could be considered defamatory.  *Hayes Microcomputer Prod., Inc. v. Franza et al.*, 601 S.E.2d 824, 828-29, 268 Ga. App. 340, 345-46 (2004).  Although it could be defamatory, whether it actually was defamatory or not would be decided by the jury.  *Id.*

### A.   "Rhetorical hyperbole" is not defamatory as a matter of law.

    Before addressing each of the elements discussed above, the Court must address a threshold issue of whether the statements here may permissibly be labeled defamatory.  In order to be actionable, the words must be more than name-calling and hyperbole.  *See Atlanta Humane Soc'y et al. v. Mills*, 618 S.E.2d 18, 25, 274 Ga. App. 159,

11

166 (2005); *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002); *see also Robel v. Roundup Corp.*, 59 P.3d 611, 148 Wash. 2d 35 (2002). In general, the statements must be capable of being proved false. *Id.* The only statements alleged by plaintiff that could conceivably be actionable here are the statements that plaintiff was fired. All the other statements made by defendant, no matter how offensive and unnecessary, are not generally actionable, for the following reasons.

Not every vulgar and inappropriate statement is actionable as defamation. *See Atlanta Humane Soc'y et al. v. Mills*, 618 S.E.2d 18, 25, 274 Ga. App. 159, 166 (2005); *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002); *see also Robel v. Roundup Corp.*, 59 P.3d 611, 148 Wash. 2d 35 (2002) (vulgarisms aimed at plaintiff, along with the words "idiot," "snitch," "squealer," and "liar" were plainly abusive words not intended to be taken literally as statements of fact and thus were not actionable). If statements are not defamatory per se, Georgia law requires at a minimum that the statements be capable of being proved false (and that they cause actual harm). *Gast v. Brittain*, 589 S.E.2d 63, 64, 277 Ga. 340, 341 (2003); *Mills*, 618 S.E.2d at 24, 274 Ga. App. at 165-66.

A defendant "cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it might be." *Gast*, 589 S.E.2d at 64, 277 Ga. at

12

341. Here, the statements that "Barnes is pathetic," "I've always known Barnes is a retard...," "Barnes is 'captain back acne,'" "Barnes is a '****ing hack,'" "retarded child," and "****ing ***hole" are not factual in nature. They cannot generally be proven false. *See id.; see, e.g.,* *Blomberg v. Cox Enter., Inc.*, 491 S.E.2d 430, 433, 228 Ga. App. 178, 180 (1997) (holding that statement referring to plaintiff as "a silver tongued devil" cannot be defamatory because it cannot be proved false). For example, in *Mills*, the Georgia Court of Appeals stated that "obviously exaggerated and unprovable assertions as whether Garrett is 'evil' or 'worthy' to lick excrement from shoes," or whether he was "Mr. Kill" were not actionable. *Mills*, 618 S.E.2d at 24-25, 274 Ga. App. at 165-66. The statements here are similarly not actionable.

Although the statements that plaintiff is a "retard" or is "captain back acne" could seemingly be proved false, they fall under the category of hyperbolic and scatological language, which are also not actionable. *See id.* The law has long recognized that a statement which is based on non-literal assertions of "fact" cannot be actionable. *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002); *see also, Letter Carriers v. Austin*, 418 U.S. 264, 284-86 (1974). The Supreme Court also clarified in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990), that the Constitution protects "rhetorical hyperbole" that "cannot reasonably be interpreted as stating actual facts about an individual." *See also Gast*, 589

13

S.E.2d at 64, 277 Ga. at 341.

No reasonable person would understand statements that plaintiff is a "retard" or is "captain back acne" as being literal statements of fact, or as implying statements of fact about the plaintiff. These statements are ultimately immature name-calling.[2] "For such matters, 'we depend for [their] correction not on the conscience of judges and juries but on the competition of other ideas.'" *Gast*, 589 S.E.2d at 64, 277 Ga. at 341 (*quoting Gertz v. Welch*, 418 U.S. 323, 339-40 (1974)). Therefore, the only statements that could provide a basis for defamation here are the statements that plaintiff was fired. The analysis will therefore continue on this statement, alone.

---

[2] There is one case that suggests that insults and name-calling could be defamatory. *Bullock v. Jeon*, 487 S.E.2d 692, 695 (Ga. App. 1997) (stating that "[a]lthough not slander per se, Jeon's statements could be characterized as derogatory name-calling, but then special damages would have to be shown.... [citations omitted.] Bullock has admitted that he suffered no special damages."). However, this case seems to be contrary to the case law cited above, including the Georgia Supreme Court case *Gast v. Brittain*, 589 S.E.2d 63, 64, 277 Ga. 340, 341 (2003). Therefore, this Court will ultimately treat *Bullock* as an outlier.

In addition, courts generally seem hesitant to hold as a matter of law that certain words cannot be defamatory. The court in *Bullock* seemed to exhibit the same tendency. *See Bullock*, 487 S.E.2d at 695. Rather than make a determination that the words could not be defamatory, the court instead suggested that the words could possibly be defamatory, but noted that it was irrelevant because special damage was not pled. *Id.*

14

III. **Plaintiff has pled facts sufficient to maintain a defamation action based on his allegations that defendant falsely announced that plaintiff was fired**.

As discussed above, there are a number of elements required to maintain a defamation action.  Here, plaintiff has alleged facts sufficient to meet all of them.  First, falsity has been alleged and this is sufficient to survive a motion to dismiss.   Second, plaintiff has alleged facts which, if true, would suggest that the statements were not privileged because the statements were not discreet or limited in scope to an appropriate audience.  (Am. Compl. [31] at ¶ 26.)   Further, it is clear that they were published, according to the complaint.   (*Id.*)   Third, it is unnecessary for the Court to determine plaintiff's status as a public figure today because he has pled facts sufficient to suggest malice on the part of defendant.  (Id. at ¶ 29.)  By claiming that defendant was in a position to know, or knew or recklessly disregarded the truth, plaintiff has met his pleading burden.  (*Id.*) Fourth, although plaintiff has arguably not pled facts sufficient to make a claim for slander per se, his allegations may constitute slander per quod.  *See Davita Inc. v. Nephrology Assoc., P.C.*, 253 F. Supp. 2d 1370, 1377 (S.D. Ga. 2003).  Lastly, plaintiff has pled sufficient facts to suggest special damages and therefore his ability to prove loss.  (Am. Compl. [31] at ¶¶ 28, 41, 46.)

A. **Plaintiff has alleged falsity**.

Plaintiff has asserted that the statements that he was fired are false.   (Am. Compl. [31] at ¶ 27.)   This is sufficient to

15

survive a motion to dismiss because all facts are to be construed in his favor. *Hickson v. Home Federal of Atlanta*, 805 F.Supp. 1567, 1571 (N.D.Ga. 1992)(stating "[t]he court construes the pleadings broadly, accepting all facts pleaded therein as true and viewing all inferences in a light most favorable to the nonmoving party.")(*citing Cooper v. Pate*, 378 U.S. 546, 546 (1964)). Therefore, so long as plaintiff's complaint alleges that the statements are false, the Court will assume this to be the case. Defendant claims that his statements that plaintiff was fired are true. (Defendant's Memorandum in Support of His Motion to Dismiss Amended Defamation Claim ("DMSMD") [38] at pp. 14-15.) However, defendant's attempts to reference dictionary definitions of "fired" and "terminated" to prove this assertion do not make it so. Plaintiff's denial is sufficient to survive this motion to dismiss.

B. **Plaintiff has alleged facts which suggest that defendant made unprivileged statements to third parties, thus meeting the unprivileged publication requirement**.

Plaintiff alleged that defendant made statements which were not privileged and were clearly communicated to many third parties. (Am. Compl. at ¶¶ 26-27.) First, publication is the communication of information to a third party. *Pavlovski v. Thornton,* 15 S.E. 822, 822, 89 Ga. 829, 829 (1892); RESTATEMENT (SECOND) OF TORTS § 577 (1977). It is clear on the face of the complaint that publication occurred here because defendant made the comments on the air and to viewers

16

of the film.   (Am. Compl. [31] at ¶ 26.)

    In order to assert a defense of privilege, "the defendant must show, among other things, a proper occasion for the utterance, and that the publication was limited to proper persons." *Duchess Chenilles, Inc. v. Masters*, 67 S.E.2d 600, 605, 84 Ga. App. 822, 829 (1951)(holding that communication that plaintiff had stolen goods, in the presence of at least three neighbors with no legitimate interest in the information, could not be privileged); *see* GA. CODE ANN. § 51-5-7 (addressing which types of statements will be granted a qualified privilege). Here, defendant claims no privilege, and it is plausible, if not likely, on the face of the complaint that these statements were not privileged, and that publication occurred here. These allegations are sufficient to survive the motion to dismiss.

**C.**   **Plaintiff has alleged facts which make plausible the existence of actual malice on the part of defendant**.

    Public figures and public officials cannot recover damages for defamation relating to their public conduct unless they prove that the defamatory statements were made with actual malice. *Morton v. Stewart*, 266 S.E.2d 230, 232, 153 Ga. App. 636, 638 (1980)(*citing Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 (1974). Whether the defamed plaintiff was a public figure is an issue for the Court. *Mathis v. Cannon*, 573 S.E.2d 376, 381-82, 276 Ga. 16, 22-23 (2002). However, the Court declines to decide whether plaintiff is a public figure at this point in the litigation.   Here, even assuming plaintiff is a public figure, plaintiff has alleged sufficient facts

17

to suggest that defendant knew, or recklessly disregarded, the truth as to whether plaintiff Barnes was fired. Plaintiff has therefore pled actual malice to a degree sufficient to overcome this motion to dismiss.

"The definitive test for determining whether an individual is a public figure was established in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974)." *Sewell v. Eubanks,* 352 S.E.2d 802, 803, 181 Ga. App. 545, 545 (1987). In some instances an individual may achieve such pervasive notoriety that he becomes a public figure for all purposes. *Id.* More commonly, an individual injects himself or is drawn into a public controversy and thereby becomes a limited purpose public figure. *Sewell v. Eubanks,* 352 S.E.2d 802, 181 Ga. App. 545 (1987)(citing to *Gertz,* 418 U.S. at 351). Whether plaintiff is a public figure is a fact intensive inquiry, and this Court will not make this determination today on the pleadings. *See Mathis v. Cannon,* 573 S.E.2d at 381-82, 276 Ga. at 22-23. The Court will instead move forward and address whether plaintiff has alleged actual malice.

'Malice' in the constitutional sense is not ill will, hatred, or charges calculated to injure. *Garrison v. State of La.,* 379 U.S. 64, 71-73 (1964); *Williams v. Trust Co. of Ga.,* 230 S.E.2d 45, 50-52, 140 Ga. App. 49, 55-56 (1976). "Constitutional malice ... [involves] the speaker or publisher's awareness of actual or probable falsity

18

or his reckless disregard for their falsity." *Williams*, 230 S.E.2d at 51, 140 Ga. App. at 56. Actual malice is not presumed, "but is a matter of proof by the plaintiff." *Id.* Because actual malice is a matter of proof, allegations of knowledge of falsity or a reckless disregard for the statements' falsity is sufficient at this stage in the litigation.

Here, plaintiff has alleged facts which, if true, would be sufficient to show actual malice on the part of defendant. (Am. Compl. [31] at ¶ 29.) If defendant knew, or was in a position to know (by virtue of being employed by the station) and recklessly disregarded the truth, as plaintiff alleges, then malice has been shown. (Am. Compl. [31] at ¶ 29.) Although defendant disputes plaintiff's contention, the Court here acts on the assumption that all of plaintiff's assertions are true. *Hickson v. Home Federal of Atlanta*, 805 F.Supp. 1567, 1571 (N.D.Ga. 1992)(*citing Cooper v. Pate*, 378 U.S. 546, 546 (1964)). Plaintiff has alleged that defendant had access to the truth and acted recklessly in disregarding it. (Am. Compl. [31] at ¶ 29.) This alone is sufficient to survive a motion for dismissal.

### D.    Plaintiff has alleged statements which are not slanderous per se, but may be slander per quod.

In Georgia, slandering a person in reference to his trade or business is sufficient to constitute slander per se. GA. CODE ANN. § 51-5-4(3). However, falsely stating that plaintiff was fired, according to the case law, arguably does not reference plaintiff's

trade or profession.  *See Davita Inc. V. Nephrology Assoc., P.C.*, 253 F. Supp. 2d 1370, 1378 (S.D. Ga. 2003).  Therefore, plaintiff here has perhaps not alleged slander per se.  However, he has alleged statements which imply wrongdoing.  This allegation of improper innuendo is sufficient for the claim to continue to the jury under the theory of slander per quod.  *Id.* at 1377.

### 1.    **Slander per se**

Sections 51-5-4(1) and (2) of the Georgia code state that imputing a crime to another, or charging another with having a contagious disease or being guilty of a debasing act, are slander per se.  GA. CODE ANN. § 51-5-4(1), (2).  Potentially relevant here is § 51-5-4(3) which lists another form of slander per se.  Where a defendant "makes charges against another in reference to his trade, office, or profession, that are calculated to injure him," he has uttered slander per se.  *Id.* at § 51-5-4(3).  The other elements to make a legitimate claim under this section are: (1) the charge must be false; (2) the charge must be made with malice; and (3) the communication cannot not privileged.  GA. CODE ANN. §§ 51-5-4(a)(3), 51-5-5, 51-5-6, 51-5-7.

Assuming all the allegations are true, the issue here is: does publishing that Barnes was fired constitute "charges against [the plaintiff] in reference to his trade?"  *See id.* at § 51-5-4(a)(3).  This Court finds the reasoning of the Southern District of Georgia persuasive on this issue.  According to a case decided in that

20

district on similar facts, the answer is no. *Davita,* 253 F. Supp.2d at 1378.  The statements made by defendant that plaintiff was fired do not meet this burden and cannot be slander per se under the Georgia Code.  *Id.*

The *Davita* court made clear what is and what is not "in reference to plaintiff's trade or profession."  *Id.*  The court emphasized that the words must be used directly in reference to plaintiff's trade.  *Id.*  For example, a statement that a doctor refuses to provide health care to deserving and paying patients would be a defamatory statement that is in reference to the doctor's trade because the statement directly references his profession.  *See id.*  In addition, this statement is calculated and certainly could injure the doctor in his profession.  However, statements that the doctor stole land from someone would not be in reference to his trade because they do not directly reference, nor are they likely to damage, his medical practice.  *Id.*

The facts of *Davita* also bear a significant resemblance to those at hand.  *Davita,* 253 F. Supp.2d at 1377.  In *Davita,* the court found that statements that (1) plaintiff had been barred from practicing at defendants' facilities and (2) plaintiff was fired, did not reference plaintiff's profession under the statute, and therefore did not constitute slander per se.  *Id.* at 1377-78. To be slander per se, the words "'are those which are recognized as injurious on their face-without the aid of extrinsic proof.'"  *Macon Tel. Pub. Co. v. Elliott,* 302 S.E.2d 692, 696, 165 Ga. App. 719, 723 (1983).  In

21

*Davita*, there was nothing injurious in the words, "plaintiffs were fired" except that which could be inferred by the listener.  *See Davita*, 253 F.Supp. 2d at 1378.  The court stated simply, "[i]f these statements are defamatory, they cannot be so under the 'per se' provision of O.C.G.A. § 51-5-4(a)(3)."  *Id.*

Here, and similar to *Davita*, the defamatory remarks were not made "in reference" to plaintiff's trade or profession as required by GA. CODE ANN. § 51-5-4(3).  The only way the words "Barnes was fired," could constitute slander is with innuendo.  The innuendo would be that plaintiff was fired for misconduct, or for reasons similar to those of Chris ("Crash") Clark.  (See Am. Compl. [31] at ¶ 35-37.)  However, when the hearer must infer this, it can only be slander per quod, if it is slanderous at all.  *Bellemead, LLC v. Stoker,* 631 S.E.2d 693, 695-96, 280 Ga. 635, 637-38 (2006); *Davita*, 253 F.Supp. 2d at 1378.  Therefore, our next inquiry is whether the plaintiff's allegations could constitute slander per quod.

### 2.    Slander per quod

The court in *Eidson v. Berry*, 415 S.E.2d 16, 202 Ga. App. 587 (1992) explained that there are two relevant questions when determining whether statements can constitute slander per quod as a matter of law.  These are: (1) can the defendant's statements reasonably be interpreted as stating or implying defamatory facts about the plaintiff and (2) are the defamatory assertions capable of being proved false.  *Id.* at 588 *(citing Milkovich v. Lorain Journal*

22

*Co.*, 497 U.S. 1 (1990)).

The *Davita* court applied the above test to the *Davita* defendant's statements that plaintiff had exercised undue influence and that he had no morals in his medical practice. The court determined that the statements, though not defamatory on their face, may imply wrongdoing. 253 F. Supp. 2d at 1376-77. The court said, "[f]irst, both of these statements imply that plaintiffs committed undisclosed acts that support the statements." *Davita*, 253 F. Supp. 2d. at 1377. The court explained that stating that someone does not have ethics or exercises undue influence "implies the existence of facts which validate the assertion." *Id*. In addition, whether the plaintiff was guilty of some improper conduct, which the assertions implied, is capable of being proved false. *Id*. Therefore, the court held that these statements could be sufficient to state a claim for defamation. *Id*. In other words, these two statements were not inactionable as opinions. *Id*.

In this case, the statements that Barnes was fired also imply the existence of underlying facts. The natural implication is that plaintiff was guilty of some undisclosed misconduct or incompetence, which necessitated his termination. The circumstances surrounding Chris "Crash" Clark's termination with the station also increase the likelihood of such improper conduct being implied to plaintiff. (*See* Am. Compl. [31] at ¶¶ 35-37.) "Except where an alleged writing is not defamatory as a matter of law, the general rule is that the issue of defamation is a matter of fact to be determined by a jury." *Macon*

AO 72A
(Rev.8/82)

*Tel. Pub. Co. v. Elliott,* 302 S.E.2d 692, 694, 165 Ga. App. 719, 720 (1983); *Atlanta Journal Co. v. Doyal,* 60 S.E.2d 802, 82 Ga. App. 321, 330 (1950). Therefore, it is not the court's place to determine whether it is defamatory, only whether it can be. *Id.* Here, the potential implication from defendant's words, which can be proved false, is all that is required to survive this motion to dismiss.

Defendant points to case law which asserts that notices of discharge, which reflect actual termination of employees, are not actionable. (DMSMD [38] at pp. 15-16.) This is generally true. "[A]nnouncing the mere fact of an employee at-will's termination carrie[s] no defamatory implication." *Hayes Microcomputer Prod., Inc. v. Franza et al.,* 601 S.E.2d 824, 828, 268 Ga. App. 340, 344 (2004) (*citing Brewer v. MARTA,* 419 S.E.2d 60, 61, 204 Ga. App. 240, 241 (1992)); *see Zielinski v. Clorox Co.,* 450 S.E.2d 222, 225, 215 Ga. App. 97, 99 (1994). However, this is simply not what plaintiff alleges here. In addition, after careful examination of the case law, there is no case determining as a matter of law that *falsely* stating that someone was fired is not defamatory.

There are cases which have held as a matter of law that certain statements which imply derogatory facts were not defamatory. For example, in *Zielinski v. Clorox Co.,* when a termination notice contained no criticism of the plaintiff, it was not actionable, even though it was sent out during a theft investigation in which the plaintiff was a suspect. 450 S.E.2d 222, 223-24, 215 Ga. App. 97,

24

97-98 (1994). In *Zielinski*, prior to plaintiff's termination, defendant held a meeting with all its employees informing them that the plaintiff had been suspended for being "involved" in a theft.[3] *Id.* The plaintiff claimed that this meeting, combined with his termination notice, clearly implied that he was guilty of such conduct and this was why he was fired. 450 S.E.2d at 226, 215 Ga. App. at 99-100. The court, however, found that "[e]ven if [the termination notice] confirmed the suspicions earlier reported... at the all-plant meeting [regarding plaintiff's involvement in the theft], the law of 'innuendo' does not permit the enlargement of this single true, unambiguously noncritical statement into defamation on the grounds of other rumors or suspicions others may have received." *Id.; see also, Yandle v. Mitchell Motors, Inc.*, 404 S.E.2d 313, 314, 199 Ga. App. 211, 212 (1991) (holding statement that plaintiff's "lack of sales effort result[ed] in low production" could not be defamatory because it contained no criticism and was true); *see also Willis v. United Family Life Ins.,* 487 S.E.2d 376, 226 Ga. App. 661 (1997)(holding that letters directing insurance policyholders to send all premium payments to company's home office rather than to funeral home, were not defamatory as a matter of law, even though this letter was distributed during a public investigation of the funeral home's possible misconduct).

---

[3] These statements themselves were not actionable even though they were false because the statute of limitations had run on the statements made at this meeting. *Id.*

Another case with facts comparable to those of *Zielinski* is *Chance v. Munford, Inc.*, 342 S.E.2d 746, 747, 178 Ga. App. 252, 253 (1986). In *Chance*, the court held that no libel existed when the defendant posted a notice in his store stating that the plaintiff was not allowed inside. *Id.* The court said that the innuendo that readers might imply was harmless: "[t]he words ... in this case are clear and unambiguous and do not tend to injure appellant's reputation or expose [him] to 'public hatred, contempt, or ridicule.' [Cits.] The [publication contains] no hurtful innuendo regarding appellant's character or behavior and a reader's subjective decision to impute such innuendo to the [publication] is not actionable as a defamation. [Cit.]" *Chance*, 342 S.E.2d at 747, 178 Ga. App. at 253.

Although these cases resemble the instant facts at a surface level, there are important differences. Here, the defendant's words are false (plaintiff claims that he was not fired and the facts are to be construed in his favor). In the other cases, the plaintiffs had been fired and actually excluded from the store. *See Zielinski*, 450 S.E.2d at 226, 215 Ga. App. at 99-100. *Chance*, 342 S.E.2d at 747, 178 Ga. App. at 253. Therefore, in the cases cited above, the innuendos were being drawn from true information, which is not defamatory, whereas here a false statement would be responsible for any resulting innuendo. In addition, all the defendants in the cases above had legitimate reasons for posting and distributing the information that they did. *See Zielinski*, 450 S.E.2d at 226, 215 Ga.

26

App. at 99-100. *Chance*, 342 S.E.2d at 747, 178 Ga. App. at 253.   An employer may legitimately inform his staff of the termination of an employee, and a shopkeeper can legitimately keep a customer out of his store.   The courts in these cases do not address privilege, but regardless of privilege, each defendant had a legitimate business reason for publishing what they published. *See id.*   The facts here are different.   Defendant allegedly told listeners and people who came to the screening that plaintiff was fired.   (Am. Compl. [31] at ¶¶ 26, 27, 33.)   Defendant did not supply a business reason for such behavior, and the Court does not know of one that might explain it.

Although defendant points to cases holding that a single, true, non-critical statement cannot be defamatory, there is case law suggesting the opposite.   For example, in *Wright v. Southern Bell Tel. & Tel. Co., Inc.*, 313 S.E.2d 150, 169 Ga. App. 454 (1984), plaintiff alleged that the telephone company had turned her phone service off in order to coerce her into paying her son-in-law's bill, for which she had no legal responsibility.   It was undisputed that her payments were up to date.   313 S.E.2d at 152, 169 Ga. App. at 455-56.   The plaintiff claimed that the recording on her phone, which stated that her telephone line had been disconnected, was defamatory because it implied that she had not paid her bill. *Id.*   The court held that this recording was not defamation per se, but could be defamation per quod. *Id.*

If the court cannot say as a matter of law that defendant's statements are not defamatory, then the motion to dismiss must be

27

denied.  *Hayes Microcomputer Prod., Inc. v. Franza et al.*, 601 S.E.2d
824, Ga. App. (2004).  It is possible and permissible for the jury
to find that the statements that Barnes was fired implied that he had
done some undisclosed acts, which necessitated his termination.
Further, the jury could find that this is defamatory.  This is
especially true considering the circumstances surrounding Chris
"Crash" Clark's notorious departure from the station.  (*See* Am.
Compl. [31] at ¶¶ 35-36.)  This simple potential implication from
defendant's words is all that is required to survive this motion to
dismiss.  It is not the Court's position to decide that defendant's
statements were or were not defamatory, so long as they are not non-
defamatory as a matter of law.  *Macon Tel. Pub. Co. v. Elliott,* 302
S.E.2d 692, 694, 165 Ga. App. 719, 720 (1983); *Atlanta Journal Co.
v. Doyal,* 60 S.E.2d 802, 82 Ga. App. 321, 330 (1950).

> **E.**      **Plaintiff has alleged facts sufficient to make
> plausible a finding of special damage.**

Because plaintiff has not alleged any slander per se, he must
plead special damage in order to maintain an action.  GA. CODE ANN.
§§ *51-5-4(b) (1984); McGee v. Gast*, 572 S.E.2d 398, 400, 257 Ga. App.
882, 883 (2002).  Defendant claims that plaintiff has failed to do
this.  (DMSMD [38] at pp. 9, 18.)  It is important to first note the
new wording of the threshold requirement to survive a motion to
dismiss.  At the pleading stage, plaintiff must make "allegations
plausibly suggesting (not merely consistent with)" ... the cause of

28

action being asserted. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007). According to the Eleventh Circuit interpretation, our question here is whether plaintiff "has alleged enough facts to suggest, raise a reasonable expectation of, and render plausible" the fact that he suffered special damage. *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007).

When determining whether plaintiff has "pleaded" special damages, it is important to try to discern what special damages are. It would seem special damages are the counterpart to presumed damages. Damage is assumed in situations involving slander per se because the language itself is sufficient to automatically infer negative consequences. *See* GA. CODE ANN. §§ 51-5-4 (1984). In situations where the language is not sufficient to assume that damage resulted, it makes sense to require the plaintiff to show that damage actually occurred. *See id.* Under this analysis, plaintiff is simply required to plead actual damage (and causation), to have plead special damages. In short, because special damages are not assumed to have occurred, plaintiff must "allege enough facts to suggest ... and render plausible" the fact that such damage occurred. *Watts*, 495 F.3d at 1296.

There is very little guidance for what words are sufficient to plead special damage. The only requirement seems to be that the damage be such that it can be calculated in monetary terms. "The special damages required to support an action for defamation, when the words themselves are not actionable, must be the loss of money

29

or some other material temporal advantage capable of being assessed in monetary value. [citation omitted]." *McGee v. Gast*, 572 S.E.2d 398, 401, 257 Ga. App. 882, 885 (2002)(*citing Webster v. Wilkins*, 456 S.E.2d 699, 217 Ga. App. 194, 196 (1995)). In other words, the damage itself does not have to be unique or special, it just needs to have occurred and it needs to be calculable. *See id.* In addition, it does not seem that the actual value needs to be precise or come in any particular form. The Court in *McGee* stated that "'[t]he loss of income, of profits, and even of gratuitous entertainment and hospitality'" will be sufficient, so long as "plaintiff can show that it was caused by the defendant's words." *Id.*

In his brief, defendant cites to *McGee* to support his claim that plaintiff has not pled special damages. (DMSMD [38] at p. 9.) However, *McGee* is inapposite and it does not tend to strengthen defendant's argument. The court in *McGee* first emphasized that plaintiff was not injured in his career or livelihood. *McGee*, 572 S.E.2d 398, 400, 257 Ga. App. at 884. The court also pointed out that the allegedly defamatory remarks were not apparently reported to anyone who was in a position to damage the plaintiff. McGee, 572 S.E.2d at 401, 257 Ga. App. at 885. Most importantly in *McGee*, the court noted that the timeline of events, as put forward by the plaintiff, foreclosed the possibility that the defendant had caused the damage of which the plaintiff complained. *Id.* The allegedly

AO 72A
(Rev.8/82)

defamatory words were uttered after the plaintiff was discharged from his volunteer position, which was the only damage the plaintiff claimed. *Id.* When, as in *McGee*, the pleadings make clear that damage was not suffered, or that causation cannot be proved, it is clear that the complaint should be dismissed. *See also, Dagel v. Lemcke*, 537 S.E.2d 694, 254 Ga. App. 243 (2000).

The facts here present a marked departure from the facts in *McGee* because plaintiff alleges that defendant's words affected plaintiff's livelihood. (Am. Compl. [31] at ¶ 28.) Here, after plaintiff arranged his departure from 99X, his former on-air partner allegedly told the world that he had been fired from that position. (Am. Compl. [31] at ¶¶ 26, 33.) Defendant's statements could obviously have had negative consequences on plaintiff's potential listenership, his fans, and his potential future employment in radio in Atlanta, and this is what plaintiff claims. *Id.* This impact could clearly affect plaintiff's livelihood, according to the complaint. This alleged damage is also capable of being boiled down to money. Further, the timeline makes sense here, whereas it did not in *McGee*. *See McGee*, 572 S.E.2d at 401, 257 Ga. App. at 885. It seems perfectly plausible that the defamatory remarks could have negatively affected plaintiff's career because they were uttered directly after his departure and when he was searching for, or beginning, a new job. Plaintiff has pled facts sufficient to provide him with the opportunity to prove these assertions.

Defendant also claims that plaintiff's failure to plead with

31

specificity is fatal.  However, there is a big difference between pleading special damages and proving special damages.  This Court refuses to require plaintiff to supply proof of special damages to survive a motion to dismiss.  According to Georgia law, the amount and specifics of the damage and causation are matters of proof. *Peacock Const. Co. v. Erickson's, Inc. et. al*, 174 S.E.2d 276, 277, 121 Ga. App. 544, 544 (1970).  The Georgia Court of Appeals stated that "special damage is a matter of proof and allegations thereof are not essential to the statement of a claim."  *Id. (citing Tench v. Ivie*, 173 S.E.2d 237, 121 Ga. App. 114 (1970)).  In addition, requiring more than an allegation of damage at this stage in the litigation would be contrary to Rule 8.  *See* FED R. CIV. P. 8(a). Therefore, proving the specifics of this allegation (i.e. finding employers who refused to work with him or listeners who stopped listening and supporting him because of defendant's words) is a matter of proof, which plaintiff will have to address as this litigation moves forward.

According to the Eleventh Circuit and *Twombly*, "...the question [now] is whether [plaintiff] has alleged enough facts to suggest, raise a reasonable expectation of, and render plausible the fact that" he suffered and will be able to show special damage as a result of defendant's defamatory comments.  *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  The answer to that question is "yes."  Here, plaintiff has pled allegations that plausibly

32

suggest that defamation occurred and that it caused him damage.  (*See* Am. Compl. [31] at ¶ 28.)   He has alleged damage, which will be capable of monetary assessment, and causation is also alleged and plausibly provable.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's Motion to Dismiss Amended Defamation Claim [38].


SO ORDERED, this _/ 3_ day of November, 2007.


_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

33